**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

CRAIG S. MESZES,

        Plaintiff,

vs.                                         Case No. 3:04-cv-505-J-32HTS

JOHN E. POTTER, Postmaster General,
United States Postal Service,

        Defendant.

## ORDER[1]

This discrimination and retaliation case is before the Court on Defendant John E. Potter's Motion for Summary Judgment (Doc. 45) and Plaintiff Craig S. Meszes' Response thereto. (Doc. 50.) The Court heard oral argument on November 20, 2007.

I. Background

Taken in the light most favorable to Plaintiff, this is a very condensed verson of the facts. Plaintiff worked for the Postal Service and was stationed at the St. Augustine Post Office since the summer of 1997. (Doc. 45-2 at 30.) At that time, James Bluhm was the Postmaster of St. Augustine and George Arsenault was the

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

acting station manager. (Id. at 29-30.) Bluhm was Plaintiff's ultimate supervisor. (Id. at 30.) Shortly after his arrival in St. Augustine, Bluhm promoted Plaintiff to a vacant supervisor position. (Id. at 33.) In that position, Plaintiff routinely worked between 60 - 80 hours per week. (Id. at 43.)

Plaintiff was diagnosed with human immunodeficiency virus (HIV) in 1988. (Id. at 59.) His condition became worse in January 2001, when he was diagnosed with acquired immunodeficiency syndrome (AIDS). (Id. at 59-60.) Plaintiff testified that, from when he started work in St. Augustine until 2001, he had lost approximately 50 - 55 lbs and his health was beginning to fail. (Id.) While he had previously spoken to Bluhm about reducing his hours, Plaintiff first submitted Family Medical Leave Act (FLMA) certification that his medical condition required reduced hours on a form dated January 12, 2001. (Doc. 45-4 at 20-22) Soon thereafter, Bluhm noted Plaintiff's request and reassigned him to "the graveyard shift" starting at 4:00 a.m. (Doc. 45-2 at 52-54.) While that shift was scheduled to run until 1:00 p.m., Plaintiff would often work until almost 5:00 p.m. (Id.) After Plaintiff complained of this switch to Bluhm, Plaintiff states that Bluhm "kept on making allegations, threats, he was going to make sure that I don't tell my doctor things and walk myself out of a job." (Id. at 66.)

Plaintiff submitted another FMLA certification in April of 2001. (Doc. 45-4 at 24.) Dr. James Connor told Plaintiff's employer that Plaintiff's work hours should be restricted to 40 hours per week with two consecutive days off. (Id.) Specifically,

Connor noted that "odd hours such as 4:00 a.m. to 1:00 p.m. only compound and worsen [Plaintiff's] health condition." (Id.) After receiving this form, Bluhm originally told Plaintiff that "he didn't have a job for [Plaintiff] that was 40 hours a week with two days off in a row." (Doc. 45-2 at 60-61.) However, soon after Plaintiff submitted the second FMLA certification he was assigned to the annex facility at the St. Augustine Post Office, where he kept regular hours. (Id. at 67.) Meanwhile, it appears that Bluhm referred Plaintiff's request to the Reassignment/Reasonable Accomodation Committee. (Id. at 62-64.) Plaintiff met with that committee on August 23, 2001 and received notice on September 10, 2001 that he would be accommodated through a regular workweek at the annex facility. (Doc. 45-4 at 31.) This reassignment coincided with Bluhm leaving St. Augustine for a detail to another facility. (Doc. 45-2 at 74-75.) Bluhm's detail lasted for approximately 10 months and ended in the summer of 2002 when he again became Plaintiff's supervisor. (Id.) During that period, Plaintiff stayed within his FMLA limitations and received a positive performance evaluation from his immediate supervisor. (Id. at 76; Doc. 50-4 at 6.)

On October 2, 2002 Plaintiff was issued a Notice of Proposed Reduction in Grade and Pay for failing to follow instructions on September 6 and 7, 2002. (Doc. 45-4 at 37.) Specifically, Plaintiff was cited for failing to go to lunch at a specified time, failing to submit a plan to deal with excess mail, and delaying the mail. (Id.) This action was eventually sustained through a lengthy administrative review process

involving the Merit System Review Board (MSRB). Bluhm retired during the pendency of the appeal. (Doc. 45-2 at 169-170.) The MSRB reached a final decision to sustain Plaintiff's downgrade on February 20, 2004. (Doc. 45-4 at 92.) Plaintiff was notified of this decision by letter dated March 2, 2004 and ordered to report to the St. Augustine Florida Main Post Office to begin work in his new position. (Id.) However, Plaintiff refused to come to work and told Postmaster Steve Kirkland that he "could not come back to work" and that Kirkland would "have to fire me." (Doc 45-2 at 171.) After being repeatedly warned in writing of the consequences of going AWOL, Plaintiff was issued a Notice of Removal on April 20, 2004. (Doc. 45-4 at 99.)

II. Legal Standard

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that establish the absence of any genuine material, factual dispute." Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003) (internal quotations omitted). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). In determining whether summary judgment is appropriate, a court must draw inferences

from the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts in that party's favor. <u>Centurion Air Cargo, Inc. v. United Parcel Serv. Co.</u>, 420 F.3d 1146, 1149 (11th Cir. 2005).

### III.  Discussion

Plaintiff alleges a variety of claims in his five count second amended complaint. (Doc. 14.)  The Court will discuss Plaintiff's claims in the following order: (A) discrimination and retaliation under the FMLA and Rehabilitation Act; (B) hostile work environment based on disability; and (C) equal protection and due process.

### A.  Discrimination and Retaliation Claims

Plaintiff alleges that he was wrongfully demoted from Supervisor of Customer Services to Part Time Flexible City Letter Carrier based on his disability in violation of the Rehabilitation Act and that he was retaliated against for asserting his rights under both the FMLA and Rehabilitation Act.  He further alleges, based on representations at oral argument, that the demotion resulted in his constructive discharge from the Postal Service as of December 2, 2002.  After consideration of the issues raised by the parties through an examination of the record, full briefing and oral argument, the Court finds that there are genuine issues of material fact on these issues.  Specifically addressing pretext, Plaintiff has rebutted Defendant's proffered reasons for his demotion by showing disparate treatment as compared to another postal employee, Lou McIntyre.  While McIntyre and Plaintiff arguably had different

duties at the post office, their job title was the same and both were given instructions from Bluhm to develop a plan to deliver the mail on time. (Doc. 50-5 at 11.) The fact that Plaintiff was disciplined when the mail was delayed while McIntyre was not is sufficient to create a genuine issue of material fact concerning pretext that cannot be resolved at the summary judgment stage. See Rojas v. Florida, 285 F.3d 1339, 1344 (11th Cir. 2002) (explaining in a Title VII sex discrimination case that a plaintiff can establish pretext by showing that "male employees with employment histories like the plaintiff's were not subject to the same adverse employment action as the plaintiff").

Additionally, the Court cannot resolve, as a matter of law, Plaintiff's claim that he was constructively discharged from the Postal Service upon his downgrade.[2] To show constructive discharge, Plaintiff must "demonstrate that working conditions were so intolerable that a reasonable person in [his] position would have been compelled to resign." Durley v. APAC, Inc., 236 F.3d 651, 658 (11th Cir. 2000). The Court cannot determine on summary judgment whether Plaintiff's demotion and the way in which Plaintiff learned of that demotion[3] acted to constructively discharge Plaintiff

---

[2] It is not clear from Plaintiff's complaint, memorandum of law, or oral argument that he is alleging a separate, discrete claim based on his actual discharge on April 20, 2004. Nevertheless, the Court finds as a matter of law that such a claim would be without basis because Plaintiff simply refused to report to work after learning that he had lost his MSRB appeal. (Doc. 45-2 at 171.) This refusal provided Defendant with a legitimate, non-discriminatory reason to terminate Plaintiff's employment that has not been rebutted. See e.g. Kaufmann v. GMAC Mortg., 229 Fed.Appx 164, 170 (3d Cir. 2007).

[3] In an affidavit, Plaintiff claims that "Postmaster James Bluhm and Supervisor George Arsenault forced me to stand in Postmaster Bluhm's office and read the initial proposal for

from his Postal Service employment.  See Buckley v. Hospital Corp. of America, Inc., 758 F.2d 1525, 1530-31 (11th Cir. 1985) (demotion from supervisor to staff nurse position created a jury question on the issue of constructive discharge).  Therefore, the Court finds that summary judgment on Plaintiff's constructive discharge claim must be denied.[4]

### C. Hostile Work Environment

In Count I of his second amended complaint, Plaintiff alleged hostile work environment discrimination based on disability.  (Doc. 14 ¶ 44.)  To establish a prima facie case of hostile work environment discrimination, Plaintiff must show that:  (1) he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment was based on a protected characteristic; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) employer responsibility through direct or vicarious liability.  See Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).  The Court will not analyze all five of these elements, as Plaintiff's failure to show conduct sufficiently severe and

---

discipline issued . . . on October 10, 2002, in their presence.  While I read the proposal in their presence, they mocked me and laughed at me when I wept upon reading the proposal."  (Doc. 50-9.)

[4]  The Court has not decided what effect the events occurring after Plaintiff's demotion, including the MSRB appeals process, should have on Plaintiff's case and what part, if any, of that information that the jury would be allowed to consider at trial.  The parties should be prepared to discuss these matters at the November 30th hearing.

pervasive based on his disability is dispositive of his claim.

The touchstone of a hostile work environment claim is the presence of severe and pervasive harassment based on a protected characteristic. See Gupta, 212 F.3d at 583 (noting that the requirement of severe or pervasive conduct "is the element that tests the mettle of most sexual harassment claims"). In evaluating whether the harassment is severe and pervasive, courts look to "the frequency of the conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's job performance." Johnson v. Booker T. Washington Broadcasting Serv., Inc., 234 F.3d 501, 509 (11th Cir. 2000) (citing Mendoza v. Borden, Inc., 195 F.3d 1238, 1244-45 (11th Cir. 1999)).

Here, Plaintiff alleges only a few instances of harassment based on his disability that might be considered objectively "severe." First, Plaintiff's reassignment to "the graveyard shift" might be seen as harsh when considering the instruction of Plaintiff's doctor to keep regular hours. (Doc. 45-2 at 67.) Second, when informed by Plaintiff that a colleague was missing work because of an AIDS related illness, Bluhm stated that the worker "was getting what he deserved." (Id. at 69.) Third, the way in which Plaintiff was informed of his downgrade could support Plaintiff's theory of a hostile work environment. (Doc. 50-9.) However, none of these incidents, either standing alone or analyzed in the full context of Plaintiff's employment, are enough

to create a hostile work environment. While Plaintiff was in fact reassigned to the graveyard shift, Defendant promptly returned him to regular hours after receiving an additional FMLA certification from Plaintiff's doctor. (Id. at 67). Although Bluhm's comment regarding the other clerk was inappropriate and might circumstantially support his discriminatory animus toward Plaintiff, its severity is lessened when considering that the comment was not directed toward Plaintiff. (Id. at 69). The fact that Plaintiff was teased and embarrassed upon being demoted, while unfortunate, was neither physically threatening to Plaintiff nor did it occur more than once. As the Supreme Court explained in Faragher v. City of Boca Raton, "simple teasing . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" 524 U.S. 775, 788 (1998). Plaintiff's claims are not of the quality or frequency that would adequately support a theory of hostile work environment based on disability. See Chambers v. Walt Disney World Co., 132 F.Supp 2d 1356, 1370 (M.D. Fla. 2001) (granting summary judgment on hostile work environment claim where supervisor made an isolated offensive utterance that black employees should not be told about promotion opportunities); cf. Quiles-Quiles v. Henderson, 439 F.3d 1, 7 (1st Cir. 2006) (affirming jury verdict for employee on hostile work environment disability discrimination claim where employee "was subject to such constant ridicule about his mental impairment that it required him to be hospitalized and eventually to withdraw

from the workforce").

The other conduct alleged by Plaintiff does not support a theory of hostile work environment based on disability. Even taking as true that Bluhm erroneously initiated debt collection actions against Plaintiff (Doc. 45-2 at 90-92), treated Plaintiff like he was invisible (Doc. 45-2 at 65), and was generally an intemperate and difficult boss to work for (Id. at 35-37), that conduct is not directly connected to Plaintiff's disability and cannot support a hostile work environment theory of recovery. The Court agrees with Defendant's argument that "the hallmark of a disability harassment case is pervasive conduct characterized by hostile or abusive comments about an employee's disability." (Doc. 45-1 at 22.) Plaintiff failed to present facts showing that type of workplace. See Dockery v. Nicholson, 170 Fed. Appx. 63, 67 (11th Cir. 2006) (unpublished) (affirming summary judgment for employer where supervisor had grabbed employee's arm, wanted to get rid of employee, and made demeaning comments about employee's disability"). Plaintiff's claims of hostile work environment discrimination fail as a matter of law.

### D.  Equal Protection and Due Process Claims

Count IV and V of Plaintiff's amended complaint assert violations of equal protection and due process under the United States and Florida Constitutions. At the hearing, Plaintiff conceded that these claims were not properly brought. Accordingly, the Court will grant summary judgment on both claims.

Accordingly, it is hereby

**ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. 45) is **GRANTED** as to Counts IV and V of Plaintiff's Second Amended Complaint (Doc. 14) and on Plaintiff's hostile work environment claim contained in Count I.

2. Defendant's Motion for Summary Judgment (Doc. 45) is **DENIED** as to the remaining claims of Count I and Counts II and III of Plaintiff's Second Amended Complaint (Doc 14.)[5]

3. Trial shall commence on **December 10, 2007 at 9:00 a.m.** before the undersigned in the United States Courthouse, Courtroom No. 10B, Tenth Floor, 300 North Hogan Street, Jacksonville, Florida. The Court will hold a final pretrial conference on **November 30, 2007 at 10:00 a.m. by telephone**. Counsel for Defendant shall initiate the call as set forth at Doc. 54.

4. Each party shall file with the Clerk of the Court: proposed **Jury Instructions**, proposed **Voir Dire**, proposed **brief statement of the case** to be read to the venire, as well as any form of **Special Verdict**, if one is required in the case, **no later than December 5, 2007.** Copies shall be served on all other parties, and two (2) copies marked **"Judge's courtesy copy"** of each shall be provided directly to Judge

---

[5] The Court views this as a close call and will revisit these rulings at the Rule 50 stage of the trial.

Corrigan's Chambers, Suite 11-100.

**NOTE**:  If your office technology permits, please provide the Court with a disk containing your jury instructions in WordPerfect format.

5.  On the date trial commences, each party **shall file with the Clerk's Office** (Room 9-150) the original of their respective **Exhibit List** and **Witness List**; and shall provide **three (3) copies** thereof to the Courtroom Deputy Clerk in the courtroom at the beginning of the trial.  All exhibits are to be pre-marked in accordance with M.D. Fla. Rule 3.07.  An extra copy of the exhibits must be provided to the Court.

6.  Counsel are directed to notify the Court promptly of any development subsequent to the entry of this Order which would in any way affect the trial of their case by calling Marielena Diaz, Courtroom Deputy, at 904-549-1303.

7.  During trial only, counsel for the parties are permitted to enter the courthouse with cellular telephones, laptop computers and electronic equipment and, further, are **GRANTED** permission to use their equipment[6] within the courthouse facilities.

**8.  If the parties desire a settlement conference with the Magistrate Judge before the trial, counsel may contact the assigned law clerk at (904) 549-1302 to make that request.**

---

[6]Cell phones must be turned off while in the courtroom.

12

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of November, 2007.

TIMOTHY J. CORRIGAN
United States District Judge

jcd.
Copies to:
Counsel of Record